## HUNTINGTON and others, Assignees, *v.* SAUNDERS and others.[*]

*(Circuit Court, D. Massachusetts. February 6, 1883.)*

BANKRUPTCY—SUIT AGAINST BANKRUPT—BILL NOT SUSTAINABLE.

A bill brought by the assignees of a bankrupt against him and his wife, to recover property, or its proceeds, charged to have been bought by the bankrupt with his own money, and placed in the hands of his wife, from time to time, within eight years before his bankruptcy, but which did not describe the property, and in which no facts are alleged, except that by information from some person not named, who heard a statement or statements made by the husband, or who is in a position to be informed that some one else heard such statement or statements, and which bill seems to be founded only on suspicion and inference, without information of any specific facts, cannot be sustained on demurrer and will be dismissed.

In Equity.

The plaintiffs, as assignees in bankruptcy of William A. Saunders, bring this bill against him and his wife to recover property or its proceeds, charged to have been bought by the bankrupt with his own money, and placed in the hands of his wife, from time to time,

[*]Affirmed. See 7 Sup. Ct. Rep. 356.

within eight years before his bankruptcy, in 1875. The bill alleges that the plaintiffs have obtained about $23,000 by settlement with the wife for such property, but the bill is supposed to relate to some other and distinct property. A demurrer to the bill was sustained, and a new bill has been filed by amendment.

The defendants demur again to the amended bill for uncertainty in its charges, and for want of equity, and because of the bar of the special statute of limitations contained in the bankrupt law. Those parts of the bill which are material to these questions are substantially as follows: That for 16 years before 1875 the bankrupt was possessed of a large amount of property, of the estimated value of $200,000; that he failed in 1875, and has been ill and confined to his house ever since, and has disclosed very little property, though his debts were about $300,000; that he has not rendered proper accounts, etc.; that for a period of eight years before his bankruptcy, he, at divers times, procured with his own means, and transferred to and placed in the hands of his wife, divers large amounts of personal property in the form of money, bonds, stocks, and other like securities, being in the whole of great value, to-wit, of the value of $50,000, none of which can the plaintiffs more particularly describe, because information is withheld by all persons who have it to give, and because the property has been invested for income, and often changed in form by reinvestment, and in pursuance of devices for more effectual concealment. Proper averments are now made in the amended bill to show that such gifts were constructively fraudulent as against creditors.

To avoid the bar of the statute the plaintiffs allege that they had no information, notice, or definite suspicion of the said transfer and concealment of personal property until about the first of July, 1880, when they were informed by a person who was in a position to have information about the matter, but whose information was unknown to the plaintiffs, that for many years prior to his bankruptcy the said William A. Saunders, from time to time, purchased bonds in Boston to be presented to his wife, as he then stated; that thereupon they examined the wife and two other witnesses in the bankruptcy, who admitted that the wife had property, which, however, they officiously declared to be her own, and the plaintiffs are satisfied, on inquiry, that this fund was not derived from her separate estate, and therefore bring this suit.

*George W. Park,* for complainants.

*J. H. Young,* for defendants.

LOWELL, C. J. One of the defendants' objections seems to be well taken, and perhaps two. This bill will not lie for money received by the wife, under the decision of the supreme court in *Phipps* v. *Sedgwick*, 95 U. S. 3. It is not, therefore, an equitable *assumpsit* or trover, but replevin for the recovery of specific property conveyed by the husband to the wife by way of gift, when he was insolvent, or specific property into which the first has been converted. The plaintiffs do not make out any case, which can be admitted or denied, for the recovery of any such property. It is plain that they neither know nor have information of any such property. Some one, who was in a position to have information, has told them "that for many years prior to his bankruptcy the said William A. Saunders, from time to time, purchased bonds in Boston, to be presented to his wife, as he then stated," and thereupon they examined her and other witnesses, and discovered that she has property which on inquiry they do not believe was derived from her separate estate, though she and all the other witnesses swear that it was.

What specific property do the plaintiffs seek to recover? They do not know. They wish to put the defendant Mary P. Saunders to the proof of the general denial that she holds any property by gift from her husband, made after he became insolvent, except that for which the bill alleges that she has already paid $23,000 by way of compromise. There are no facts alleged except that by information from some person not named, who heard a statement or statements made by the husband, or who is in a position to be informed that some one else heard such statement or statements, that the husband bought bonds between 1867 and 1875, to be presented to his wife. Suppose the bill were taken *pro confesso,* what decree could be made upon it? What injunction could be framed under it? None, must be answered to both these questions. The parties sustain no such relation to each other that a general bill for an account will lie as it might if the defendant Mary had been a partner with or bailiff of her husband. I am of opinion, therefore, that there is nothing in the bill which requires an answer. It seems to be a bill founded on suspicion and inference, without information of any specific facts.

Then why was not the suit brought within two years? There are general allegations of concealment, which, possibly, might save the bill on demurrer. But, taking all the charges and statements together, and supposing them sufficiently definite, it is very doubtful whether there has been any concealment. It may be that a bankrupt is bound to disclose to his assignees whatever his creditors could possibly have

any right to take, and that his silence would be a concealment. But the wife is not the bankrupt, and it is against her that the bill is brought. The bankrupt is not a proper party to a bill of this kind, except to join with his wife in a conveyance which may be ordered by the court, if the state law makes his joinder necessary. Whether any such property is involved in this case no one can say. Formerly, it was the practice in England to make the bankrupt a defendant in such cases; but this was when the very absurd practice prevailed of permitting him to dispute his bankruptcy collaterally, and therefore it was necessary that he should be called on in every suit in chancery to admit or deny the title of his assignees. The law of this country, under the statutes of the states and the acts of congress, except that of 1800, has always been that the adjudication of bankruptcy is conclusive. This is now the law of England, and in neither country is the bankrupt a proper party, except as I have above stated.

Now, it is by no means clear on this bill that the wife has concealed anything. If gifts from husband to wife are assailed, it is because they are thought to be unjust to his creditors, under all the circumstances, by reason of his condition as to debts and property when they were made. They are constructive rather than actual frauds, and there is, generally speaking, no concealment of the fact that such a piece of land or such a share of stock has been given. However, my decision is placed upon the point first considered.

Demurrer sustained. Bill dismissed.